IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James C. Shaw, Jr.,            :
                              :
Plaintiff,            :      Case No. 2:07-cv-00717
                              :
v.                              :      Judge James L. Graham
                              :
Total Image Specialists,       :      Magistrate Judge Kemp
Inc. dba Vacuform Industries   :
                              :
Defendant.            :


OPINION AND ORDER


Plaintiff, James C. Shaw, Jr. filed his complaint in this case
alleging that Vacuform Industries dba Total Image Specialists, Inc.
("TIS") violated the Family and Medical Leave Act, 29 U.S.C. §
2601, *et seq.*("FMLA") by terminating his employment. Both parties
have filed motions for summary judgment which are now before this
court.


I. **FACTS**

Mr. Shaw worked for TIS as an Operator and was a member of
the Sheet Metal Workers' International Association ("Union"). TIS
laid off Mr. Shaw on April 6, 2005[1] along with 18 other bargaining
unit employees, and the Union filed an unfair labor practice charge
with the National Labor Relations Board. Subsequently, the NLRB

_____

[1]Documentation in the record indicates that Mr. Shaw was
laid off on April 6, 2005, but his motion argues he was off work
starting on April 15, 2005. As determined by this opinion, the
actual hours worked are a material dispute of fact not
appropriate for disposition on summary judgment and this
inconsistency again underscores the need for a fact finder to
determine the actual hours worked by Mr. Shaw.

issued a "Complaint and Notice of Hearing" against TIS. On August 8, 2005, prior to a hearing, TIS, the Union, and Mr. Shaw entered into "Payment and Release" Agreements (hereinafter "Agreements") that settled the charge.

As part of the Agreements, TIS agreed to monetary settlements for each of the 18 employees. While some of the employees were paid 100% of their lost compensation, Mr. Shaw was not. He was paid only $2,000.00 under his Agreement. TIS recalled Mr. Shaw back to work on Monday, August 15, 2005. Neither Mr. Shaw's notice to return to work nor his Agreement contained any provision for reinstatement.

TIS had a union negotiated "no-fault" attendance policy in place during Mr. Shaw's employment. Under the policy, the company assessed points for each absence accumulated during a rolling 12-month period. An associate was subject to progressive discipline ultimately resulting in a final written warning for accumulating 8 points and termination after accumulating 9 points. Each associate was given two and a half free points per calendar year. These points were not counted in determining progressive discipline.

Mr. Shaw accumulated a number of attendance points while working for TIS. In 2005, Mr. Shaw accumulated 10.5 points, less his 2.5 free points, for a total of 8 points in 2005. In 2006, Mr. Shaw accumulated an additional 3.5 points by April 7, 2006, less his 2.5 free points, for a total of 1 point for the 2006 calendar year. One point of the 3.5 points for 2006 was a period from February 13, 2006 until February 16, 2006 when Mr. Shaw was hospitalized. Because Mr. Shaw accumulated a total of 9 points in the 12-month rolling period from April 8, 2005 to April 7, 2006, TIS terminated him on April 12, 2006 under its attendance policy.

Mr. Shaw filed this lawsuit, claiming that the period of time that he was in the hospital in February 2006 qualified as FMLA leave and TIS acted unlawfully in counting that time as a point under the attendance policy that contributed to his discharge. TIS, however, argues that Mr. Shaw was not eligible for FMLA coverage and even if he was, he received no adverse consequences from taking his FMLA leave. Both parties filed motions for summary judgment that are now before this court.

## III. Motion for Summary Judgment

### A. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993). "[T]he mere existence of some alleged factual dispute

3

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

III. **DISCUSSION**

    A. **FMLA ELIGIBILITY**

        1. **Calculation of Actual Hours Worked**

The FMLA guarantees eligible employees 12 weeks of leave for

the birth or adoption of a child; to care for a child, spouse or parent with a serious health condition; or "because of a serious health condition that makes the employee unable to perform the functions of the [employee's] position." 29 U.S.C. § 2612(a)(1)(A-D). In order to be covered under the FMLA, an employee must be "eligible." 29 U.S.C. § 2611(2). In order to be eligible, an employee must show that he worked 1,250 hours during the 12-month period immediately preceding the date the leave is taken. 29 U.S.C. § 2611(2)(A)(ii); 29 C.F.R. § 825.110(a).

It is not clear based on the Complaint whether Mr. Shaw is making a claim under a theory of FMLA interference, pursuant to 29 U.S.C. § 2615(a)(1), or FMLA retaliation, pursuant to 29 U.S.C. § 2615(a)(2). See Wysong v. Down Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007). In the Sixth Circuit, both theories require Mr. Shaw be an eligible employee at the time he requested the leave in order to state a claim under the FMLA. Humenny v. Genex Corp., 390 F.3d 901, 906 (6th Cir. 2004)(holding that the FMLA's "eligible employee" requirement applies in all FMLA cases, including retaliation cases).

In the Sixth Circuit, in order to determine if an employee has worked the requisite 1,250 hours for his employer, the FMLA directs courts to examine the principles for calculating hours of service established under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 2611(2)(C); Staunch v. Cont'l Airlines, Inc., 511 F.3d 625, 630 (6th Cir. 2008). "'The determining factor is the number of hours an employee has worked for the employer within the meaning of the FLSA. . . . Any accurate accounting of actual hours worked under FLSA's principles may be used.' If the 'employer does not maintain an accurate record of hours worked by an employee . . . the

employer has the burden of showing that the employee has not worked the requisite hours.'" Id. quoting 29 C.F.R. § 825.110(c).

Mr. Shaw's hospitalization started on February 13, 2006. Thus, the 12 month-period must be measured backwards from February 12, 2006 to February 13, 2005. Here, TIS submitted an affidavit along with time cards indicating that Mr. Shaw worked only 1,204.5 hours during the requisite time period. Concerned with the inconsistencies on the face of the time cards, this court ordered TIS to supplement its evidence. After so supplementing, TIS conceded that it had inadvertently left off 40 hours worked for the week of November 6, 2005, taking the total up to 1,244.5 hours.

TIS also argued, however, that its own time cards were inaccurate for the dates January 27 and January 29, 2006 because those weeks overlapped and showed two weeks worked for 50 total hours when the correct record should have shown one week worked for 40 total hours. Thus, TIS argued there was a net loss of 10 hours that should be subtracted from the calculation of 1,244.5 hours, for a total hours worked calculation of 1,234.5.

To support this argument, TIS submitted an affidavit of Dennis Kaufman, CEO of TIS, attached to an "ADP report." The ADP report is a payroll report with a list of dates and hours worked. Mr. Kaufman's affidavit states "I also investigated Mr. Shaw's time cards with the dates of January 27, 2006 and January 29, 2006. In my opinion, there should have been only one card for the week of January 27, 2006 because the ADP Report indicates that he was paid 40 hours for that week."

Upon examination of the ADP report submitted with Mr. Kaufman's affidavit, this court is still concerned with the discrepancies in the evidence submitted by TIS. Though TIS attempts

6

to draw attention to a potential 10-hour overlap for the January 27 and January 29 time cards, the court's examination of the January 2006 time cards and the ADP report finds that the January 6 and January 20 time cards appear not to have even been counted in the ADP report. TIS correctly states that 40 hours are listed on the report for the pay period end date of January 27, 2006, but that pay period end date is preceded on the ADP report with a date of January 13, 2006. Thus, a full two weeks elapsed between the pay dates of January 13, 2006 and January 27, 2006. Likewise, on the ADP report January 13, 2006 is preceded by the date December 30, 2005, and a full two weeks elapsed between the pay dates of December 30, 2005 and January 13, 2006. When the court compares the ADP report to the actual time cards submitted by TIS, the time cards reflect that 40 hours were worked the week ending January 20, 2006 and 40 hours were worked the week ending January 6, 2006, but these hours are not reflected on the ADP report.[2]

The time cards and the ADP report appear to be in conflict in other places as well. The last four entries on the ADP report do not match the time cards regarding the number of hours worked. Moreover, as noted in Mr. Shaw's brief, the dates on the time cards for January 2006 are handwritten and have scratched out the original typed dates on the time cards. TIS has not attempted to explain the reason for this handwriting.

Mr. Shaw has submitted an affidavit that states he worked an

---

[2]TIS has not established what work days are included in the pay dates listed on the ADP report. It is not possible to tell whether the hours listed on the ADP report are hours worked for the weeks ending on the pay dates listed, or whether those hours reflect time worked prior to the weeks ending on the dates listed. The ADP report and the time cards submitted are inconsistent and TIS has not resolved this inconsistency.

additional 11 hours on Friday December 23, 2005. TIS counters that Mr. Shaw did not actually work but instead was given holiday pay.[3] Thus, under Mr. Shaw's version of the facts, Mr. Shaw worked at least 1,255.50 hours, after including the 11 hours Mr. Shaw claims to have worked on December 23, 2005.[4] And under TIS's version of the facts, Mr. Shaw worked just 1,234.5 hours. Again, TIS arrives at that number by arguing that a net 10 hours should be subtracted due to the overlapping dates in January. The credibility of this evidence has been called into question because of the inconsistency between the ADP report and the time cards and because of the handwritten dates on the time cards.

Both parties' motions for summary judgment must be denied because there are material issues of fact related to whether Mr. Shaw was eligible for FMLA protection. Mr. Shaw's motion must be denied because there is a genuine issue of fact as to whether he worked 11 hours on December 23, 2005. TIS's motion must be denied because of the numerous inconsistencies between the ADP report and the time cards create a genuine issue of fact as to the actual number of hours Mr. Shaw worked during the 12-month period between

---

[3]TIS's motion to strike (Doc. 39) Mr. Shaw's response to this court's December 19, 2008 Order is denied. Mr. Shaw's response only underscores this court's concern that there are materially disputed facts with regard to the number of hours Mr. Shaw worked. Further, TIS was afforded the opportunity to respond, and did actually respond, to Mr. Shaw's assertion that an additional 11 hours were worked on December 23, 2005 in its reply to its motion to strike.

[4]Mr. Shaw's brief argues that he worked 1,267.25 hours but his arithmetic is inaccurate and the correct total, taking into consideration those hours for which Mr. Shaw submitted an affidavit, is 1,255.5 hours.

February 13, 2005 and February 12, 2006.[5]

## 2. <u>Hours Worked During Lay-Off</u>

Mr. Shaw argues that even if TIS's calculation of actual time worked is correct, he still prevails because TIS did not count the time he was off work from April 6, 2005 to August 15, 2005 due to an alleged unfair labor practice.

In calculating the "hours of service" under the FMLA, the Sixth Circuit has made clear that a court should include only those hours actually worked and should not include those hours where the employee is "completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes." 29 C.F.R. § 785.16(a); <u>Mutchler v. Dunlap Mem'l Hosp</u>., 485 F.3d 854, 858 (6th Cir. 2007)(holding that the FLSA regulations inform the reading of the FMLA). Because Mr. Shaw did not actually work from April 6, 2005 to August 15, 2005 and instead could have used that time effectively for his own purposes, those dates normally would not be counted as "hours of service."

Although this is the general rule, the Sixth Circuit has found at least one exception in the case of <u>Ricco v. Potter</u>, 377 F.3d 599 (6th Cir. 2004). In <u>Ricco</u>, the court held that "make-whole relief *awarded* to an *unlawfully terminated* employee may include credit towards the hours-of-service requirement contained in the FMLA's definition of 'eligible employee.'" <u>Id.</u> at 600 (emphasis added). In <u>Ricco</u>, an arbitrator ruled that an employee had been unlawfully

---

[5]The parties also dispute issues surrounding the medical certification. Because summary judgment is not appropriate because there is a dispute as to whether Mr. Shaw is even eligible for FMLA protection, this court need not reach the certification issue.

terminated in violation of the FMLA and awarded that employee reinstatement and full credit for years of service for seniority and pension purposes. Id. at 601. The Sixth Circuit held that the employee therefore could count those hours she had missed due to her unlawful termination toward the FMLA's 1,250-hour statutory requirement for eligibility. Id. at 605. Central to the Sixth Circuit's holding was that Ricco's employer had unlawfully terminated Ricco and that Ricco received a make-whole award, putting her in the same position that she would have been in had her employer not engaged in the unlawful conduct.

> "[T]ime that an employee would have worked *but for her unlawful termination* is . . . different from occasional hours of absence due to vacation, holiday, illness, and the employer's failure to provide work, etc., in that they are hours that the employee wanted to work but was *unlawfully prevented* by the employer from working. . . . [T]he purpose of the FMLA's hours-of-service requirement is properly served by including these hours. In such cases, the *employer's unlawful conduct* has prevented the employee from satisfying the hours-of-service requirement. Moreover, denying employees credit towards the hours-of-service requirement for hours that they would have worked, *but for their unlawful termination*, rewards employers for their *unlawful conduct*.

Id.(emphasis added); See also Mutchler v. Dunlap Mem'l Hosp., 485 F.3d 854, 859 (6th Cir. 2007) (holding "the critical point in Ricco was that the employer *wrongfully terminated* the plaintiff" and the plaintiff received a make-whole award (emphasis in the original)); Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 558 (6th Cir. 2008) (noting the Ricco court specifically required an unlawful termination).

Mr. Shaw argues that his lay off on April 6, 2005 constituted an unfair labor practice and so his time spent on lay off should be counted in calculating the number of hours he worked in the year

prior to his February 2006 hospitalization. He argues that if this court counts the period of time he was off work for that alleged unlawful discharge, he would accumulate over the required 1,250 hours and therefore satisfy the FMLA eligibility requirements. 29 U.S.C. § 2611(2)(A)(ii).

Mr. Shaw submitted an affidavit stating: "I had the choice of receiving full back pay for the four months I was off, or I could just get my job back and be paid $2,000." Shaw Affidavit, ¶ 4. The affidavit also contained a statement that "out of the $2,000 back pay, there were payroll deductions made, and my net pay was about $1,554.00" (Shaw Affidavit, ¶ 4), which Mr. Shaw argues demonstrates that the $2,000 represented earned wages. This evidence does not entitle Mr. Shaw to summary judgment because it only goes to whether or not there was a "make-whole award" which, on its own, is not sufficient to meet the rule in Ricco. Ricco required not only a make whole award, but also a finding of unlawful termination. Ricco, 377 F.3d at 605. Even if Mr. Shaw could demonstrate that the settlement compensated him so that he was "made whole", that evidence is not sufficient to meet the standard in Ricco without being accompanied by a finding of unlawful conduct. Here, the settlement agreement contains no admission of unlawful conduct on the part of TIS and Mr. Shaw has not alleged that TIS ever agreed to admit to unlawful termination.

In Ricco, unlike here, there was a final determination by an arbitrator that the company had engaged in unlawful conduct and was therefore entitled to a "make-whole" award. Here, there was no such final determination, only a settlement agreement, and courts have been clear that a settlement agreement is not a final judgment and therefore has no issue preclusive effect, absent a clear

intention by the parties otherwise. <u>Arizona v. California</u>, 530 U.S. 392 (2000) (noting settlement agreements ordinarily lack issue-preclusive effect unless the parties intend their agreement to have such an effect), <u>Carver v. Nall</u>, 172 F.3d 513, 515 (7th Cir. 1999) (holding a settlement agreement that has not been integrated into a consent decree is not a judgment and cannot trigger res judicata), <u>Nichols v. Bd. of County Comm'rs</u>, 506 F.3d 962, 969 (10th Cir. 2007)(holding settlements ordinarily support claim preclusion but not issue preclusion), <u>Blair-Corrales v. Marine Engineers' Benefit Ass'n</u>, 380 F. Supp. 2d 22, 26 (D.P.R. 2005)(holding settlements do not ordinarily create issue preclusion unless it is clear that the parties intend their agreement to have such an effect).

Recently, the Seventh Circuit discussed <u>Ricco</u> in <u>Pirant v. United States Postal Service</u>, 542 F.3d 202, 2008 U.S. App. LEXIS 18912, at *11-13 (7th Cir. 2008). In <u>Pirant</u>, unlike in <u>Ricco</u>, the employee did not file a formal grievance or request back pay after the alleged wrongful period of missed work. The court noted that plaintiff was left with only an "unsubstantiated subjective belief" that her suspension was wrongful. <u>Id.</u> The court held that her belief was not enough to create a genuine factual dispute for trial and that by failing to pursue a formal challenge to her suspension, the employee accepted she was not entitled to either compensation or FMLA credit for the lost hours. <u>Id.</u>

Mr. Shaw's situation is more akin to the plaintiff in <u>Pirant</u> than the plaintiff in <u>Ricco</u>. Here, unlike in <u>Ricco</u>, no finding was made that Mr. Shaw's layoff was unlawful and there was no award of back pay or reinstatement. Instead, the NLRB's unfair labor practice charge was settled in the Agreements between the Union,

Mr. Shaw, and TIS. Those Agreements contain no provisions indicating the settlement represented an award of back pay or reinstatement or that there was any admission of wrongdoing by TIS. In fact, the Agreement with Mr. Shaw says "Total Image is providing this payment notwithstanding the fact that, in the absence of this Agreement, Employee would not be entitled to it." TIS's Exhibit G. Mr. Shaw's situation is more like the plaintiff in <u>Pirant</u> who chose not to further pursue his complaint against TIS and who is now left with the unsubstantiated, subjective belief that his suspension was wrongful and he is entitled to a make-whole award.

Mr. Shaw cites to <u>United States v. Guy</u>, 257 Fed. Appx. 965 (6th Cir. 2007)and <u>Murray v. Alaska Airlines, Inc.</u>, 522 F.3d 920 (9th Cir. 2008) for the proposition that the Complaint issued by the NLRB has preclusive effect and therefore, constitutes a finding of unlawful termination. <u>Guy</u> is distinguishable because it involved a final agency adjudication by an administrative agency, whereas here, a Complaint issued by the NLRB and then withdrawn is not a final, adjudicative agency action. <u>See</u> <u>NLRB v. United Food & Commercial Workers Union, Local 23</u>, 484 U.S. 112, 125-126 (1987).

<u>Murray</u> is likewise distinguishable because it involved an administrative agency's refusal to issue a complaint, and the individual did not object to this finding and it became a final order not subject to judicial review. Subsequently, the individual brought state law claims and the Ninth Circuit certified to the California Supreme Court the question of whether the administrative final order had an issue preclusive effect on the individual's state law claims. Here, there was no final order, and thus, <u>Murray</u> has no applicability to this case. Mr. Shaw has cited no law, and this court's own research revealed none, that states a Complaint

issued by the NLRB or a settlement agreement entered into after the filing of an NLRB Complaint should be equated with a final and binding arbitration decision on the merits.

Unlike these cases cited by the Mr. Shaw, here there was no final order, only an allegation in the form of a Complaint by the NLRB coupled with "Payment and Release" Agreements which did not stipulate to any wrongdoing on the part of TIS and did not state the settlement was an award of back pay or reinstatement. Thus, Mr. Shaw cannot rely on the Ricco decision to demonstrate FMLA eligibility.

### 3. Notification under 29 C.F.R. § 825.110(d)

Mr. Shaw argues that FMLA regulation 29 C.F.R. § 825.110(d) entitles him to FMLA coverage despite his ineligibility.[6] That regulation provides that if an employer fails to advise the employee whether the employee is eligible prior to the date of the requested leave the employee will be "deemed eligible." In the Sixth Circuit, as well as other circuits, the notification requirements of § 825.110(d) have been declared invalid because they "impermissibly expand FMLA eligibility beyond the parameters established in 29 U.S.C. § 2611(2)," which establishes what it means to be an eligible employee. Davis v. Mich. Bell Tel. Co., 543 F.3d 345, 354 (6th Cir. 2008). Although arguing that this regulation "points to the underlying purpose" of the FMLA, Mr. Shaw does not dispute that this regulation is invalid in the Sixth

_____

[6]Pursuant to the new FMLA final rules, effective January 16, 2009 the FMLA notice provisions of § 825.110(b) were moved to § 825.300(b)and the language regarding the employee being "deemed eligible" was removed.

14

Circuit.

**B.**   **<u>Interference or Retaliation with Mr. Shaw's FMLA Rights</u>**

TIS also argues that even if Mr. Shaw was eligible for FMLA coverage, it should still prevail on summary judgment because TIS took no adverse action against Mr. Shaw for taking FMLA leave.

The FMLA recognizes two distinct theories on which a plaintiff could prevail- FMLA interference and FMLA retaliation.

> The "entitlement" or "interference" theory arises from § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and from § 2614(a)(1), which provides that "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position." The "retaliation" or "discrimination" theory arises from § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[7]

<u>Arban v. West Pub. Corp.</u>, 345 F.3d 390, 400-01 (6th Cir. 2003). Here, Mr. Shaw has not made clear under which theory he is proceeding, so this court will address both.

To prevail on an FMLA interference theory, Mr. Shaw must establish (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the

---

[7]The Sixth Circuit has specifically stated that the FMLA prohibits employers from taking adverse employment actions against employees based on the employee's exercise of FMLA leave, even though the employee has not "oppos[ed] a practice made unlawful by the FMLA," and that the regulations afford employees protection from retaliation against the exercise of FMLA leave. <u>Bryant v. Dollar Gen. Corp.</u>, 538 F.3d 394, 402 (6th Cir. 2008).

employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled. Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007). Under an interference theory, TIS's argument amounts to stating Mr. Shaw cannot prevail under an interference theory because he cannot show the fifth element- that Mr. Shaw was denied benefits to which he was entitled.

To prevail on an FMLA retaliation theory, Mr. Shaw must make out a prima facie case of discrimination by showing that (1) he availed himself of a protected right under the FMLA by notifying his employer of his intent to take leave, (2) he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights under the FMLA and the adverse employment action. Edgar v. JAC Prods., 443 F.3d 501, 508 (6th Cir. 2006). Under a retaliation theory, TIS's argument amounts to stating that there was no causal connection between the exercise of his rights under the FMLA and the adverse employment action.

The FMLA regulations prohibit an employer from using the FMLA as a negative factor in an employment action and specifically prohibit "FMLA leave [from being] counted under 'no fault' attendance policies." 29 C.F.R. § 825.220(c). This Sixth Circuit has held that a termination based in part on an absence covered by the FMLA and in combination with other absences may still violate the FMLA. Cavin v. Honda of Am. Mfg., 346 F.3d 713, 726 (6th Cir. 2003).

Here, TIS argues that the one point Mr. Shaw was assessed for

his hospital stay was not counted as a "negative factor" because under its attendance policy, that one point was ultimately forgiven as part of Mr. Shaw's "free" 2.5 points per calendar year. This argument is not well taken. Although the one point may have been "free" it still exhausted one of Mr. Shaw's 2.5 free points. Had TIS not charged Mr. Shaw the 1 point for his FMLA leave, he would not have accumulated the 9 points required for termination because he would have still had an additional free point to keep him from reaching the 9 point maximum. Because Mr. Shaw's FMLA leave was counted as a point against him, it exhausted one of his free points, and contributed to his termination under TIS's policy. For purposes of opposing the motion for summary judgment, Mr. Shaw has demonstrated that TIS either denied him a right under the FMLA or took an adverse action against Mr. Shaw based on his FMLA leave. Thus, TIS's motion for summary judgment cannot be granted on this ground.

## IV.  Conclusion

Because there is a disputed material fact over whether or not Mr. Shaw is eligible for FMLA leave, neither party is entitled to summary judgment and both motions are DENIED. (Docs. 21, 25). In accordance with footnote 3, TIS's motion to strike is also DENIED. (Doc. 39).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

Date: February 12, 2009